IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAKOUR BROWN,** | : | **CIVIL ACTION NO. 1:22-CV-293** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **WILLIAM NICKLOW**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Shakour Brown, alleges violations of the First, Eighth, and Fourteenth Amendments arising from an incident in which he was pepper sprayed in his cell and his subsequent placement in the Pennsylvania Department of Corrections' Behavior Modification Program ("BMP"). Defendants Nicklow, Ritchie, Beaver, Bartow, and Johnson have moved to dismiss. The motion will be granted in part and denied in part.

**I.     Factual Background & Procedural History**

Brown initiated this case through the filing of a complaint on February 22, 2022, and the court received and docketed the complaint on February 28, 2022. (Doc. 1). Brown was incarcerated at the Camp Hill State Correctional Institution ("SCI-Camp Hill"), and he began a hunger strike on December 28, 2021, to protest alleged contamination of his food with bodily fluids by prison staff. (Id. at 1-2). During his hunger strike, prison staff moved him to a psychiatric observation cell. (Id. at 2). While in his cell, Brown purportedly had a "mental health crisis" on

February 2, 2022.  (Id.)  Defendants Bartow and Johnson allegedly responded to the mental health crisis by ordering their subordinate correctional officers to pepper spray Brown in his face, eyes, mouth, and hands.  (Id.)  The pepper spray purportedly caused Brown to lose vision and experience a burning sensation, breathing complications, and excruciating pain.  (Id.)  Bartow and Johnson allegedly refused to take Brown to the prison's medical department for needed treatment after the incident.  (Id. at 2-3).  The complaint also avers that unnamed defendants confiscated all of his personal property from his cell after this incident, leaving him with only a "suicide blanket and smock."  (Id. at 3).

According to Brown, Nicklow, Ritchie, Bartow, and Johnson "conspired" with each other to place him in the BMP beginning on February 14, 2022, and he was not afforded due process prior to his placement in the program.  (Id. at 3-4).  Although the BMP is governed by the DOC, defendants Nicklow, Ritchie, and Beaver are allegedly responsible for administering the program in SCI-Camp Hill. (Id.)  Inmates in the BMP are purportedly subjected to greater restrictions on their liberty and property than other inmates, including having their personal property and clothing confiscated upon admission to the program.  (Id.)  The complaint alleges that defendant Little, the Secretary of the DOC, has failed to provide those administering the program with adequate training on handling inmates with mental illnesses.  (Id. at 4). Brown contends that defendants wrongfully placed him in the program despite the fact that he suffers from "mental health disorders such as anxiety, panic attacks, phobia, and paranoia."  (See id. at 2, 4).  He alleges that his cell is "extremely cold," that he has "no ability to keep warm" in the cell, and that

2

he is unable to read, write, communicate with his family, or file grievances in his cell. (Id. at 4-5).

The complaint asserts civil rights claims for violations of Brown's First Amendment right to freedom of speech, supervisory liability, excessive force in violation of the Eighth Amendment, deliberate indifference to a serious medical need in violation of the Eighth Amendment, and violation of Brown's Fourteenth Amendment right to due process. (Id. at 5). Little, Nicklow, Ritchie, Beaver, Bartow, and Johnson are named as defendants. (Id. at 1-2). Brown seeks damages and injunctive relief. (Id.)

Defendants Nicklow, Ritchie, Beaver, Bartow, and Johnson moved to dismiss on July 13, 2022. (Doc. 21). Defendants argue (1) the complaint should be dismissed without prejudice as a "shotgun pleading" that violates Federal Rule of Civil Procedure 8; (2) that Brown's claims for injunctive relief should be dismissed as moot because Brown has been transferred out of SCI-Camp Hill; and (3) that the complaint fails to state a claim upon which relief may be granted. (Doc. 25 at 7). The motion is fully briefed and ripe for review. (Docs. 25, 35).

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County

3

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

Brown brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Turning to defendants' arguments for dismissal,[1] we first consider, and reject, their argument that the complaint should be dismissed as a shotgun pleading. "Shotgun pleadings" are complaints that assert numerous claims against

---

[1] Brown's sole argument in opposition to the motion is that the court should strike the motion because defendants failed to file a supporting brief within the time required by Local Rule 7.5. (Doc. 35). This argument is without merit. The court issued an order on August 5, 2022, concluding that defendants' failure to timely file a brief was due to excusable neglect and deeming defendants' supporting brief timely filed. (Doc. 26).

5

defendants without giving adequate notice of the grounds on which the claims rest. Timmons v. Brittain, No. 1:21-CV-798, 2022 WL 17252198, at *4 (M.D. Pa. Nov. 28, 2022) (citing Litwak v. Tomko, No. 3:16-CV-446, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018)). Ordinarily, a complaint should only be dismissed as a shotgun pleading if it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (quoting Dudley v. SCI Camp Hill, No. 1:20-cv-00523, 2020 WL 5893968, at *4 (M.D. Pa. Oct. 5, 2020)). We have no trouble understanding the substance of Brown's claims. It is clear that he seeks relief based on the alleged pepper spraying incident and his subsequent placement in the BMP. There is no basis upon which to dismiss the complaint as a shotgun pleading.

Turning to whether the complaint fails to state a claim upon which relief may be granted, we find the complaint adequately pleads an excessive force claim against defendants Bartow and Johnson arising from the alleged use of pepper spray. Excessive force claims require allegations that force was applied "maliciously and sadistically for the very purpose of causing harm." Jacobs v. Cumberland Cty., 8 F.4th 187, 193 (3d Cir. 2021) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Courts must consider whether force was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). several factors inform this analysis, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the

6

>  injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)). Brown alleges that he experienced a mental health crisis in his cell and that Bartow and Johnson responded by ordering subordinate officers to pepper spray him. (Doc. 1 at 2-3). We find these factual allegations sufficient to state an excessive force claim. There is no allegation that Brown posed a risk of harm to officers or that any other aspect of the circumstances surrounding Brown's mental health crisis justified the use of pepper spray.

We likewise find the complaint states a claim for deliberate indifference to a serious medical need against Bartow and Johnson. Prima facie claims of deliberate indifference require allegations of "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). As a result of being pepper sprayed, Brown purportedly lost vision and experienced a burning sensation, breathing complications, and excruciating pain, and Bartow and Johnson allegedly refused to take Brown to the medical department for necessary treatment. (Doc. 1 at 2-3). This is sufficient to state an Eighth Amendment claim

7

for deliberate indifference to a serious medical need. See Lanzaro, 834 F.2d at 347 (noting that serious medical need is alleged when lay people would recognize necessity for medical attention); see also Snider v. Motter, 4:13-CV-1226, 2016 WL 4154927, at *7 (M.D. Pa. June 2, 2016) (concluding that lay people would recognize prisoner's need for medical attention after being pepper sprayed), report and recommendation adopted, Snider v. Motter, No. 4:13-CV-1226, 2016 WL 4140728, at *1 (M.D. Pa. Aug. 4, 2016).

The complaint additionally states a due process claim upon which relief may be granted. Assignment of a prisoner to rehabilitative programs may trigger due process protections, under certain circumstances, if it has a substantial adverse impact on the prisoner. Vitek v. Jones, 445 U.S. 480, 493 (1980). Substantial adverse impact on the prisoner alone, however, does not trigger due process protections when "the conditions or degree of confinement . . . is within the sentence imposed upon him." Id. at 493 (internal alterations omitted) (quoting Montayne v. Haynes, 427 U.S. 236, 242 (1976)).

Our court of appeals has recognized two ways in which a prisoner's assignment to a new rehabilitative program may violate the Due Process Clause. Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010). First, due process may be violated "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." Id. (citing Vitek, 445 U.S. at 488). Second, due process may be violated "when state statutes and regulations create a liberty interest in freedom from restraint that imposes an 'atypical and significant hardship on the inmate in

8

relation to the ordinary incidents of prison life,' thereby triggering due process protection." Id. (internal alterations omitted) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  Factors to consider in determining if the program assignment has a substantial adverse impact on the prisoner include, *inter alia*, whether the prisoner's freedom of action is more restricted as a result of the assignment and whether the prisoner is compelled to participate in behavior modification programs. See Vitek, 445 U.S. at 492.

Brown alleges that defendants Nicklow, Ritchie, Bartow, and Johnson placed him in the BMP without any process and that he is subjected to mandatory behavioral modification sessions and restrictions on his liberty in the program, including confiscation of clothing and personal property.  (Doc. 1 at 3-4).  We find this sufficient to plead violation of Brown's right to due process under the standards of Vitek, 445 U.S. at 492-93, and Renchenski, 622 F.3d at 325.

We will dismiss Brown's freedom of speech and supervisory liability claims. It is not clear from the complaint what facts give rise to either one of these claims, and consequently, they fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Additionally, although defendant Little has not been served with process and accordingly has not responded to the complaint,[2] we will dismiss the claims against

---

[2] It appears that Little was not served with process because of a clerical error that caused Little's name to not be added to the electronic docket of this case at the time Brown's complaint was filed.

9

him pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2)[3] and 28 U.S.C. § 1915A[4] because the complaint fails to plead his personal involvement. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. The complaint alleges that Little has "superior oversight" over the BMP program,

---

[3] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
    **(A)** the allegation of poverty is untrue; or
    **(B)** the action or appeal—
        **(i)** is frivolous or malicious;
        **(ii)** fails to state a claim on which relief may be granted; or
        **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[4] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
    **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    **(2)** seeks monetary relief from a defendant who is immune from such relief.

(see Doc. 1 at 3), but does not allege that he had any personal knowledge that Brown was placed in the BMP or that he was personally involved in the alleged denial of due process to Brown. The only factual allegation made against Little is the conclusory assertion that he failed to train his subordinate officers in how to interact with inmates suffering from mental illness, which has purportedly led to violation of Brown's civil rights. The complaint does not allege any facts in support of this conclusory statement, such as what training Little should have provided or how the alleged lack of training led to violation of Brown's civil rights. Hence, we will dismiss the claims against Little for failure to allege personal involvement.

Finally, we will dismiss Brown's claims for injunctive relief. Defendants assert that the claims for injunctive relief are moot because they arise from his placement in the BMP at SCI-Camp Hill and he has subsequently been transferred out of SCI-Camp Hill. (Doc. 25 at 9-10). Brown does not address this argument in his opposition to the motion to dismiss, see Doc. 35, and there is no allegation in the complaint that Brown's placement in the BMP has continued after his transfer out of SCI-Camp Hill. Hence, we will dismiss the claim as moot.

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. We find that leave to amend is appropriate because the dismissed claims are factually, rather than legally, deficient.

**IV.     Conclusion**

      We will grant in part and deny in part the motion (Doc. 21) to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     February 3, 2023