IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAKOUR BROWN,** | : | CIVIL ACTION NO. 1:22-CV-293 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **WILLIAM NICKLOW**, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Shakour Brown, alleges violations of the First, Eighth, and Fourteenth Amendments arising from an incident in which he was pepper sprayed in his cell and his subsequent placement on a behavior modification plan. Defendants have moved for summary judgment. The motion will be granted.

### I.   Procedural History

Brown initiated this case through the filing of a complaint on February 22, 2022, which the court received and docketed on February 28, 2022. (Doc. 1). The complaint asserts claims for violation of Brown's First Amendment right to freedom of speech, supervisory liability, excessive force in violation of the Eighth Amendment, deliberate indifference in violation of the Eighth Amendment, and violation of Brown's Fourteenth Amendment right to due process. (Id. at 5).

On February 3, 2023, the court dismissed Brown's freedom of speech and supervisory liability claims, his claims for injunctive relief, and his claims against defendant Little, the secretary of the DOC, without prejudice and granted plaintiff

leave to file an amended complaint. (Docs. 39-40). Brown did not file an amended complaint, so the court dismissed those claims without further leave to amend on May 26, 2023, and allowed the case to proceed solely with respect to his excessive force, deliberate indifference, and due process claims against defendants Nicklow, Ritchie, Beaver, Bartow, and Johnson. (Doc. 47).

Defendants filed the instant motion for summary judgment on August 12, 2024, along with a supporting brief and a statement of material facts as required by Local Rule 56.1. (Docs. 73-75). Defendants argue that summary judgment is warranted because Brown failed to exhaust administrative remedies, because his claims fail on their merits, and because he is not entitled to compensatory damages. (Doc. 74). Brown has not responded to the motion, nor has he filed a statement of material facts responding to defendants' statement as required by Rule 56.1. Pursuant to Local Rules 7.6 and 56.1, the motion for summary judgment is now deemed unopposed and the factual assertions in defendants' statement of material facts are deemed admitted. See M.D. PA. L.R. 7.6, 56.1.

## II.   Material Facts[1]

### A.   Factual Background

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing the motion must file a separate statement responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Because Brown has not responded to defendants' statement, the statement is deemed admitted pursuant to Local Rule 56.1 and we cite directly to it.

Brown's claims arise from an alleged pepper-spraying on February 2, 2022 and his placement on a behavior modification plan on February 14, 2022. (See generally Doc. 1 at 1-4). The February 2, 2022, incident began when Brown covered his cell door with a towel and refused verbal commands to uncover it. (Doc. 75 ¶ 1). The towel prevented prison staff from seeing Brown in his cell, potentially creating a dangerous situation for Brown and the prison staff. (Id. ¶¶ 2-4). Defendant Bartow directed defendant Johnson to use pepper spray to get Brown to comply with the officers' orders. (Id. ¶ 5). Johnson gave Brown several more verbal commands to remove the towel from his cell door. (Id. ¶ 6). When Brown again refused to remove the towel, Johnson pepper-sprayed into the cell at approximately 9:05 p.m. (Id. ¶ 7). Brown continued to refuse to remove the towel. (Id. ¶ 8). Johnson gave him several additional commands to remove the towel from the cell door. (Id. ¶ 9). Brown again refused, at which point Johnson again pepper sprayed into the cell at approximately 9:15 p.m. (Id. ¶ 10). Brown continued to refuse to remove the towel. (Id. ¶ 11). Seeing that Brown was standing far away from the door in the cell, Johnson reached through the aperture used to pass meals through the door and removed the towel. (Id. ¶¶ 12-15).

Brown was not in apparent physical distress following the two uses of pepper spray. (Id. ¶ 16). Johnson asked him if he wanted medical attention, but Brown refused. (Id. ¶¶ 17-18). Following the use of the pepper spray, prison procedures required Brown to be removed from the cell and taken to a strip search area so that the cell could be decontaminated and his clothes could be changed. (Id. ¶ 19).

Johnson asked Brown to submit to being handcuffed so that these procedures could be completed, but Brown refused. (Id. ¶¶ 20-21).

A member of the prison's counseling staff approached the cell and spoke with Brown. (Id. ¶ 22). Brown told the staff member that he was refusing to comply with orders to protest his food portions being cut. (Id. ¶ 23). A registered nurse attempted to speak with Brown during this conversation, but he refused to talk to the nurse. (Id. ¶¶ 24-25). Bartow then spoke with Brown and told him that Brown's perceived issue with his meals had been resolved. (Id. ¶ 26). Bartow asked Brown if he wanted to be decontaminated, but Brown refused. (Id. ¶¶ 27-28).

Brown eventually submitted to officers handcuffing him. (Id. ¶ 29). He was taken to a strip search area where he was stripped, searched, and given a new jumpsuit. (Id. ¶ 30). Bartow then told him that he would need to change into a smock, but Brown refused. (Id. ¶¶ 31-32). The counselor came to the strip search area and attempted to get Brown to comply, but he again refused. (Id. ¶¶ 33-34). While they were speaking, a member of the prison's mental health staff approached Brown and asked him about his mental health. (Id. ¶ 35). Brown responded, "I ain't got no mental health problems." (Id. ¶ 36). Bartow and the counselor attempted to get Brown to change into a smock several more times. (Id. ¶¶ 37-43). When Brown continued to refuse to comply, Bartow gathered an extraction team and received permission from the registered nurse to use pepper spray on Brown again. (Id. ¶¶ 44-45). Bartow returned to the cell and gave Brown four orders to submit to being handcuffed. (Id. ¶ 46). Brown refused all four orders, at which point Bartow sprayed pepper spray into the cell. (Id. ¶¶ 47-48). The use of pepper

4

spray did not cause Brown to comply, so Bartow gave three additional orders to come to the door to be handcuffed. (Id. ¶¶ 49-50). When Brown again refused to comply, Bartow sprayed pepper spray into the cell. (Id. ¶¶ 51-52). Bartow then opened the cell door and the extraction team entered, handcuffed him, and carried him out of the cell and into another cell. (Id. ¶¶ 53-55). Within four minutes of Brown arriving in the new cell, Bartow asked the nurse to examine Brown, but Brown refused to be examined. (Id. ¶¶ 55-56).

On February 14, 2022, Brown assaulted a prison staff member and was placed in administrative custody. (Id. ¶ 57). A few hours later, he stated that he was going to harm himself because "that is all there is left to do." (Id. ¶ 58). Prison staff moved him into a psychiatric observation cell. (Id. ¶ 59). He was discharged from the psychiatric observation cell on February 18, 2022. (Id. ¶ 60).

Shortly after his discharge from the psychiatric observation cell, prison staff informed Brown that he would be placed in a behavior plan because of his volatile behavior. (Id. ¶ 61). The behavior plan, which went into effect on February 22, 2022, required Brown to meet with a Psychiatric Review Team ("PRT") once a week to determine his mental state and to document any progress or regression in his behavior. (Id. ¶¶ 62-63). The plan also required weekly meetings with a Program Review Committee ("PRC"). (Id. ¶ 64). The program review committee and the psychiatric review team were tasked with determining what personal property and clothing Brown would be allowed to have in his cell. (Id. ¶ 65). The plan allowed prison staff to use an "IRS system"—a restraint system that restricts an inmate's ability to use his hands—if he attempted self-harm. (Id. ¶¶ 66-67).

5

Brown met with the PRT on February 22, 2022, March 1, 2022, March 8, 2022, and March 15, 2022, and he met with the PRC on February 23, 2022, March 2, 2022, March 9, 2022, and March 16, 2022. (Id. ¶¶ 69-71). He was then transferred from SCI-Camp Hill to SCI-Fayette on March 22, 2022. (Id. ¶ 73). His behavior plan was placed on hold when he was transferred. (Id. ¶ 74).

**B.   Exhaustion of Administrative Remedies**

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (See Doc. 74-27).[2] Under DC-ADM 804, a prisoner must first submit a written grievance within 15 working days from the date of the incident. Id. § 1(A)(8). If the inmate is unable to comply with the 15-working day deadline, he may request an extension of time to file a grievance. Id. § 1(C)(2). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). Once a grievance has been filed, the prison must respond to the grievance within 15 working days. Id. § 1(C)(5)(g). Next, the prisoner must submit a written appeal to the facility manager within 15 working days. Id. § 2(A)(1)(a). Upon receiving the grievance, the facility manager must respond to the appeal within 15 working days. Id. § 2(A)(2)(d)(1). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and

---

[2] A copy of DC-ADM 804 has been produced for the court's review as part of Exhibit 27 to Defendants' motion for summary judgment. (See Doc. 74-27).

6

Appeals ("SOIGA") within 15 working days.  Id. § 2(B)(1)(b).  SOIGA must respond to the final appeal within 30 working days.  Id. § 2(B)(2)(a)(1).

Brown filed five grievances during the period relevant to this case, between February 2, 2022, and April 30, 2022.  (Doc. 75 ¶ 83).  Two of these grievances were appealed through final review by SOIGA, but did not reference any of the conduct at issue in this case and instead complained about events that occurred in January 2022.  (Id. ¶¶ 84-89; Doc. 74-27 at 43-61).  The other three grievances were not appealed through final review by SOIGA.  (Doc. 75 ¶¶ 90-95; Doc. 74-27 at 62-77; Doc. 74-28).

### III. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

**IV.     Discussion**

We first address defendants' argument that Brown failed to exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi, 904 F.3d 257, 268 (3d Cir. 2018) (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting

8

Ross v. Blake, 578 U.S. 632, 643-44 (2016)).  If a defendant establishes that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him.  Id. at 268.

Defendants argue Brown failed to exhaust administrative remedies none of the grievances he appealed through final review by SOIGA advance the claims he asserts in this litigation.  (Doc. 74 at 16-17).

We agree.  The summary judgment record establishes that Brown filed five grievances during the relevant period, two of which were appealed through final review by SOIGA but pertained to events that happened before the facts of this case, and the other three of which were not appealed through final review by SOIGA.  (See Doc. 75 ¶ 83-89; Doc. 74-27 at 43-77; Doc. 74-28).  Brown has not produced any evidence to create a genuine dispute of material fact on this issue, nor has he produced any evidence or advanced any arguments to show that the grievance process was unavailable to him.  Hence, we will grant the motion for summary judgment for Brown's failure to exhaust administrative remedies.  We do not reach defendants' alternative summary judgment arguments.

## V.   Conclusion

We will grant defendants' motion for summary judgment and close this case.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   December 18, 2024